# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HORTON v. COMMONWEALTH.

### MARCH 21, 1901.

1. CRIMINAL LAW—*Principal in Second Degree—Defining Offence of Principal.*—On the trial of a person indicted as principal in the second degree to murder of the first degree, it is proper for the trial court to define murder of the first degree, as it is included in the indictment against the principal of the first degree, and is one of the degrees of homicide with which the defendant is charged as having aided and abetted.

2. CRIMINAL LAW—*Murder—Deadly Weapons—Previous Possession—Presumption.*—A mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* a willful and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances.

3. CRIMINAL LAW—*Principals in First and Second Degree.*—Principals in the first degree are those who are the actors, or actual perpetrators of the crime—those who are the immediate perpetrators of the act. Principals in the second degree are those who did not with their own hands commit the act, but were present, aiding and abetting it. It is not necessary in order to make a person principal in the second degree that he be actually present when the crime was committed, or that he should have actually participated in the commission of the crime. The test as to whether or not he is a principal in the second degree is, was he encouraging, inciting, or in some manner offering aid or consent to the crime. All persons present lending countenance, or otherwise aiding, while another does the act, are principals in the second degree.

4. CRIMINAL LAW—*Murder—Acts and Declarations of Accused at Time of Killing.*—In determining whether a prisoner charged with murder is a principal in the second degree, the jury may consider all the acts

and declarations of the prisoner at the time of the killing, both before and after.

5. CRIMINAL LAW—*Conflicting Evidence—How Weighed.*—The jury is not to regard the evidence in a criminal case as equally balanced merely because a number of witnesses testify directly opposite to each other. The jury should determine the weight and credibility of the evidence from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor, fairness and intelligence, and all the other surrounding circumstances appearing on the trial.

6. CRIMINAL LAW—*Reasonable Doubt—Ingenuity of Counsel.*—A prisoner is entitled to the benefit of every reasonable doubt which arises in the minds of the jury upon a candid and impartial investigation of the evidence, but not to doubts raised by the ingenuity of counsel independently of the evidence.

7. CRIMINAL LAW—*Aiders and Abettors—Sharing Criminal Intent.*—To constitute an aider or abettor it is essential that the aider and abettor share the criminal intent of the principal, and if a reasonable doubt exists as to the intention of a party, in interfering in a fight between two other persons, he cannot be found guilty as an aider and abettor.

8. CRIMINAL LAW—*Aiders and Abettors—Presence—Participation.*—An aider and abettor is one who is present, actually or constructively, and participates in the crime of the principal; but any encouragement or act of assistance is a participation in the crime.

9. CRIMINAL LAW—*Verdict—Sufficiency.*—On an indictment charging one as principal in the second degree to a murder, a verdict which finds the prisoner "guilty, as charged in the indictment," and fixes his punishment, is sufficient.

Error to a judgment of the County Court of Russell county, rendered December 17, 1900, sentencing the plaintiff in error to the penitentiary for one year.

*Affirmed.*

The plaintiff in error and Henry Horton were tried jointly, and the jury found the plaintiff in error guilty of voluntary manslaughter, and fixed his term of imprisonment in the penitentiary at one year.

There was a demurrer to the indictment, but no grounds were assigned. The indictment is in the following words and figures, to-wit.:

"Virginia, Russell County, to-wit.:

" In the County Court of said county.

"The jurors of the Commonwealth of Virginia, in and for the body of the county of Russell, now attending upon the County Court of said county, upon their oaths present that Jack Horton, of said county, on the —— day of —————, in the year 1900, in the county aforesaid, in and upon one William T. Horton, then and there being in said county, feloniously, willfully, and of his malice aforethought, did make an assault, and that him, the said Jack Horton, with a certain club, then and there held by the said Jack Horton, and that the said Jack Horton, with the club aforesaid, so held and had by him, did then and there feloniously, willfully, and of his malice aforethought did strike, beat, and wound him, the said William T. Horton, in and upon the head of him, the said William T. Horton, giving to the said William T. Horton one mortal wound, of which mortal wound the said William T. Horton, from the said —— day —————, in the year aforesaid, until the —— day of —————, in the year aforesaid, in the county aforesaid, did languish, and languishing did live, on which said —— day —————, in the year aforesaid, the said William T. Horton, in the county aforesaid, of said mortal wounds did die.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that Taylor Horton and Henry Horton, on the day and year aforesaid, in the county aforesaid, feloniously, willfully, and of their malice aforethought, were present counselling, aiding, abetting, assisting the said Jack Horton, the felony and murder aforesaid, to do and commit, and so the jurors aforesaid, upon their oaths aforesaid, do say that Jack Horton, Taylor Horton, and Henry Horton, the said William T. Horton, in manner and form aforesaid, feloniously, willfully, and of their malice aforethought, did kill and murder, against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that Jack Horton, Taylor Horton, and Henry Horton, on the —— day of ——————, 1900, in the county aforesaid, in and upon one William T. Horton, feloniously, willfully, and of their malice aforethought, did make an assault; and that the said Jack Horton, Taylor Horton, and Henry Horton, with certain clubs and rocks in their hands, then and there held, the said William T. Horton, in and upon the head and body of him, the said William T. Horton, then and there, feloniously, willfully, and of their malice aforethought, did strike, beat, and wound, giving to the said William T. Horton, then and there, with the clubs and rocks aforesaid, in and upon the aforesaid head and body of the said William T. Horton, mortal wounds, of which said mortal wounds, he, the said William T. Horton, from the said —— day of ——————, in the year aforesaid, to the —— day of ——————, in the year aforesaid, in the county aforesaid, did languish, and languishing did live; on which said —— day of ——————, in the year 1900, the said William T. Horton, in the county aforesaid, of the said mortal wounds did die; and so the jurors aforesaid, upon their oaths aforesaid, do say that the said Jack Horton, Taylor Horton, and Henry Horton, the said William T. Horton, in manner and form aforesaid, feloniously, willfully, and of their malice aforethought, did kill and murder, against the peace and dignity of the Commonwealth of Virginia."

The evidence is sufficiently set out in the opinion of the court. After all the evidence was in, the Attorney for the Commonwealth tendered the following instructions:

*Instructions for the Commonwealth.*

### No. 1.

"The court instructs the jury that murder is the unlawful killing of any person with malice aforethought."

## No. 2.

"The court instructs the jury that murder is distinguished by the law of Virginia as murder in the first degree and as murder in the second degree."

## No. 3.

"The court further instructs the jury that every homicide in Virginia is presumed in law to be murder in the second degree. In order to elevate the offence to murder in the first degree, the burden of proof is upon the Commonwealth, and to reduce the offence to manslaughter, the burden of proof is upon the prisoner."

## No. 4.

"The court further instructs the jury that to constitute murder in the first degree, the prisoner must have been incited to the killing by malice, and the killing must have been a willful, deliberate, and premeditated act on the part of the prisoner; that is to say, he must have willed, deliberated, and premeditated that he should kill the deceased, or do him some serious bodily injury, the necessary result of which would be his death, and from which he died."

## No. 5.

"The court instructs the jury that, on a charge of murder, malice is presumed from the fact of killing. When the killing is proved, and is unaccompanied with circumstances of palliation, the burden of disproving malice is thrown upon the accused."

## No. 6.

"The court further tells the jury that whenever the killing is willful, deliberate, and premeditated, the law infers malice from this fact."

## No. 7.

"The court further tells the jury that the rule of law is that a man shall be taken to intend that which he does, or which is the necessary consequence of his act."

## No. 8.

"The court instructs the jury that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* willful. deliberate, and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

## No. 8½.

"The court further instructs the jury that to constitute a willful, deliberate, and premeditated killing, it is not necessary that the intention to kill should exist any particular length of time prior to the actual killing—it is only necessary that such intention should come into existence for the first time at the time of killing, or any time previously."

## No. 9.

"The court instructs the jury that principals in the first degree in every murder or other crime are those who are the actors, or actual perpetrators of the crime—those who are the immediate perpetrators of the act. That principals in the second degree are those who did not with their own hands commit the act, but were present, aiding and abetting it. It is not necessary in order to make a person a principal in the second degree, that he be actually present when the crime was committed, or that he actually participated in the commission of the crime. The test as to whether or not he is a principal in the second degree is, was he encouraging, inciting, or in some manner offering aid or consent to the crime. All persons present, lending countenance, or otherwise aiding, while another does the act, are principals in the

second degree, and liable to the same punishment as if they were principals in the first degree, and actually committed the crime."

### No. 10.

"The court instructs the jury that if they believe, from the evidence, beyond a reasonable doubt in this case, that Jack Horton killed William T. Horton, as charged in the indictment, and that the defendants Taylor Horton and Henry Horton, or either of them, were present aiding, abetting, counselling, advising or consenting to said crime, that then the said defendants, Taylor Horton and Henry Horton, are equally guilty with Jack Horton in the said murder."

### No. 10½.

" The court instructs the jury that in considering whether or not Taylor Horton and Henry Horton are principals in the second degree in this case, aiding, abetting, counselling, advising, or consenting to said killing of *Jack* Horton, they may consider all the facts and declarations of the said Taylor Horton and Henry at the time of the said killing, both before and after the killing of the said William T. Horton, and if they believe from the whole evidence that they were so aiding and abetting in said crime, then they are guilty in this case."

### No. 11.

"The court instructs the jury that if they believe, from the evidence in this case, beyond a reasonable doubt, that Jack Horton willfully, maliciously, deliberately, premeditatedly, killed Wm. T. Horton, in the county of Russell, and that the defendants, Taylor Horton and Henry Horton, or either of them, were present aiding, abetting, counseling, advising, or consenting to said crime, that then the said defendants, Taylor Horton and Henry Horton, or either one of them who were so present, aiding, abetting, counseling, advising, or consenting to said crime, are guilty of murder in the first degree."

### No. 12.

"The court instructs the jury, as a matter of law, that in considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be reasonable doubt, and it must arise from a candid and impartial investigation of all the evidence in the case, and unless it is such that, were the same kind of doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say that you have an abiding conviction, of the truth of the charge, you are satisfied beyond a reasonable doubt."

### No. 13.

"The court instructs the jury that the credibility of the witnesses is a question exclusively for the jury, and the law is that, where a number of witnesses testify, directly opposite to each other, the jury is not bound to regard the weight of evidence as equally balanced. The jury have the right to determine, from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly."

### No. 14.

"The court further tells the jury that, in determining the weight to be given to the testimony of different witnesses in this case, the jury are authorized to consider the relationship of the witnesses to the parties, if the same is proved; their interest, if any, in the result of this case, their temper, feeling, or bias, if any has been shown; their demeanor while testifying; their ap-

parent intelligence, and their means of information; and to give such credit to the testimony of such witnesses as under all the circumstances such witness seems to be entitled to."

"To the giving of instructions, Numbers 8, 10½, and 13, the defendants, by their counsel, objected, but the court overruled said objections, and gave all the instructions offered by the Commonwealth, to which ruling and action of the court, in overruling the defendant's objections to said instructions, Numbers 8, 10½, and 13 the defendants excepted."

The prisoner, by counsel, tendered the following instructions:

### No. 1.

"The court instructs the jury, as matter of law, that the mere charge or indictment against the defendants does not justify any inference as to the guilt of the defendants, and that the defendants, in law, are presumed to be innocent of the offence charged in the indictment, and the burden is on the Commonwealth to prove the guilt of the defendants beyond any reasonable doubt, and that unless the jury believe that the evidence proves beyond a reasonable doubt every fact essential to the conviction of the defendants, they must find them not guilty."

### No. 2.

"The court further tells the jury that it is necessary, in order to make one an aider and abetter, that he should do or say something showing his consent to the felonious purpose, and contributing to its execution."

### No. 3.

[Same as No. 2.]

## No. 4. .

"The court instructs the jury that, to constitute an aider or abettor, it is essential there should be: First, presence, actual, or constructive; second, participation in the crime. But the court further tells the jury that any encouragement or act of assistance is a participation in the crime."

## No. 5.

"The court further instructs the jury that if they believe from the evidence in this case, that a difficulty occurred between William T. Horton, deceased, and Jack Horton, in which the said William T. Horton received blows that resulted in his death, and if the jury further believe, from the evidence, that said blows were struck by Jack Horton, independent of any act or participation in the difficulty upon the part of Taylor Horton and Henry Horton, and that said Taylor Horton or Henry Horton did not aid or abet the said Jack Horton, then the court tells the jury that they cannot convict the said Taylor or Henry Horton for the murder or killing of the said William T. Horton, either as principals in the first or second degree."

## No. 6.

"The court further instructs the jury that, to constitute an aider and abettor, it is essential that the aider and abetter should share the criminal intent of the principal or party who committed the offence. The court further instructs the jury that wherever a reasonable doubt exists as to the person's intention, in interfering in the struggle or fight between two other persons, he cannot be found guilty as an aider and abettor, and if the jury shall believe, from the evidence in this case, that a fight or difficulty arose or occurred between Jack Horton and W. T. Horton, in which the said Jack Horton was the aggressor, and that the said Jack Horton struck the said W. T. Horton two blows upon the

head, which resulted in his death, then the court tells the jury that unless they shall further believe, beyond all reasonable doubt, that Taylor Horton and Henry Horton interfered or took part in said difficulty, and shared in the criminal intent of the said Jack Horton, they cannot find the said Taylor Horton and Henry Horton guilty as aiders and abettors in the crime."

## No. 7.

"The court instructs the jury that any act done by either of the defendants, Taylor Horton or Henry Horton, after completion or consummation of the crime, and after the blow was struck that killed the deceased, cannot be considered as aiding and abetting the principal felon who struck the fatal blows and committed the crime, and unless the jury believes, from the evidence, beyond all reasonable doubt, that the defendants, Taylor Horton and Henry Horton, aided or abetted the principal prior to the time the blows were struck that killed the deceased, and prior to the completion and consummation of the crime, the court tells the jury that the said defendants, Taylor Horton and Henry Horton, cannot be found guilty as aiders and abettors."

## No. 8.

"The court instructs the jury that any act done by Taylor Horton after the completion or consummation of the crime, and after the blows were struck that killed the deceased, cannot be considered as aiding and abetting the principal felon who struck the fatal blows, and unless the jury believes, from the evidence, beyond all reasonable doubt, that the defendant, Taylor Horton, aided or abetted the principal prior to the time the blows were struck that killed the deceased, and the completion of the crime, then the court tells the jury that the said defendant, Taylor Horton, cannot be found guilty as an aider or abettor."

## No. 9.

"The court further instructs the jury that any act done by the defendant, Henry Horton, after the completion or consummation of the crime, and after the blows were struck that killed the deceased, cannot be considered as aiding and abetting the principal felon who struck the fatal blows, and unless the jury believes from the evidence, beyond all reasonable doubt, that the defendant, Henry Horton, aided or abetted the principal prior to the time the blows were struck that killed the deceased, and prior to the completion of the crime, then the court tells the jury that the said defendant, Henry Horton, cannot be found guilty as an aider and abettor."

## No. 10.

"The court instructs the jury, upon the trial of a criminal case, if a reasonable doubt of any fact necessary to convict the prisoner is raised in the mind of the jury by the evidence itself, or by the ingenuity of the counsel, upon any hypothesis consistent therewith, that doubt is decisive in favor of the prisoner's acquittal.

The verdict of not guilty means no more than this: That the guilt of the accused has not been demonstrated in the precise, specific, and narrow form prescribed by law. The evidence to convict the prisoner must not merely be beyond all reasonable doubt, consistent with the hypothesis of his guilt, it must also be beyond all reasonable doubt inconsistent with any hypothesis of innocence that can be reasonably drawn therefrom."

## No. 11.

" The court tells the jury that if they should believe from the evidence, that Taylor Horton and Henry Horton participated in any way, whether by word or act, in a difficulty with Jack Horton and Wm. T. Horton, deceased, yet if, from the whole evidence, the jury should have a reasonable doubt in their minds as

to whether or not such participation was for the purpose of aiding and abetting the said Jack Horton in the killing of the said W. T. Horton, if the jury should believe that the said Jack Horton did kill the said W. T. Horton, then the court further tells the jury that they cannot find the said Taylor Horton and Henry Horton guilty of aiding and abetting the said Jack Horton in said killing."

### No. 12.

"The court instructs the jury that to constitute an aider or abettor, it is essential that there should be: First, presence, actual or constructive; second, participation in the crime."

To the giving of instructions Nos. 10 and 11, the Commonwealth, by its attorney, objected, and the court sustained said objection, and refused to give said instructions Nos. 10 and 11, offered in behalf of the defendants, and the court refused to give said instruction No. 12, offered by the defendants, but modified said instruction No. 12, which instruction, as modified and given by the court, is in the words and figures following, to-wit.:

"The court instructs the jury that to constitute an aider and abettor, it is essential that there should be: First, presence, actual or constructive; second, participation in the crime; but the court further tells the jury that any encouragement or act of assistance is a participation in the crime."

To which ruling and action of the court, in refusing to give instructions Nos. 10, 11, and 12 offered by the defendants, and in modifying said instruction No. 12, and giving the same as modified, the defendants excepted.

*William E. Burns* and *J. F. Griffith*, for the plaintiff in error.

*Attorney-General A. J. Montague*, for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Jack, Taylor, and Henry Horton were indicted in the County Court of Russell county for the murder of William Horton— Jack Horton being charged with the actual commission of the crime, and Taylor and Henry Horton as being present aiding, abetting and assisting him in its perpetration. Upon their arraignment Taylor and Henry Horton demurred to the indictment, and, the demurrer being overruled, they pleaded "not guilty," and upon their trial the jury rendered a verdict finding Henry Horton guilty of murder in the second degree and fixing his term of imprisonment in the penitentiary at five years, and Taylor Horton guilty of voluntary manslaughter, and ascertaining his term of confinement in the penitentiary at one year.

The demurrer was properly overruled. See *Hatchett* v. *Commonwealth*, 75 Va. 931; *Kemp* v. *Commonwealth*, 80 Va. 450.

After the evidence had been introduced numerous instructions were asked upon the part of the Commonwealth, all of which were given. The prisoner excepted to Nos. 8, $10\frac{1}{2}$, and 13, which are as follows:

"No. 8. The court instructs the jury that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* willful and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

"$10\frac{1}{2}$. The court instructs the jury that in considering whether or not Taylor Horton and Henry Horton are principals in the second degree in this case, aiding, abetting, counselling, advising, or consenting to said killing of William Horton, they may consider all the acts and declarations of the said Taylor Horton and Henry Horton at the time of the said killing both before and after the killing of the said William T. Horton, and if they believe, from the whole evidence, that they were so aiding and abetting in said crime, then they are guilty in this case."

"13. The court instructs the jury that the credibility of the witnesses is a question exclusively for the jury, and the law is that, where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of evidence as equally balanced. The jury have the right to determine from the appearance of witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit and to give credit accordingly."

The prisoner also asked instructions, all of which were given except Nos. 10, 11, and 12, which are as follows:

"No. 10. The court instructs the jury that upon the trial of a criminal case, if a reasonable doubt of any fact necessary to convict the prisoner is raised in the mind of the jury by the evidence itself, or by the ingenuity of the counsel, upon any hypothesis consistent therewith, that doubt is decisive of the prisoner's acquittal.

The verdict of not guilty means no more than this: That the guilt of the accused has not been demonstrated in the precise, specific and narrow form prescribed by law. The evidence to convict the prisoner must not merely be beyond all reasonable doubt, consistent with the hypothesis of his guilt, it must also be beyond all reasonable doubt inconsistent with any hypothesis of innocence that can be reasonably drawn therefrom."

"No. 11. The court tells the jury that if they should believe, from the evidence, that Taylor Horton and Henry Horton participated in any way, whether by word or act, in a difficulty with Jack Horton and William T. Horton, deceased, yet if, from the whole evidence, the jury should have a reasonable doubt in their minds as to whether or not such participation was for the purpose of aiding and abetting the said Jack Horton in the killing of said William T. Horton, if the jury should believe that the said Jack Horton did kill the said W. T. Horton, then the court

further tells the jury that they cannot find the said Taylor Horton and Henry Horton guilty of aiding and abetting the said Jack Horton in the said killing."

"No. 12. The court instructs the jury that to constitute an aider and abettor, it is essential that there should be: First, presence, actual or constructive; second, participation in the crime, but the court further tells the jury that any encouragement or act of assistance is a participation in the crime."

No. 12 was given, but with an addition made to it by the court and objected to by the prisoner.

We see no objection to instruction 8 given on behalf of the Commonwealth. It was necessary, or at least proper, to define murder in the first degree. That offence was included in the indictment found againts Jack Horton, and is therefore one of the degrees of homicide with which Taylor Horton is charged as having aided and abetted him in committing. The facts and circumstances which distinguish the liability of principals in the first and second degree are well stated in instruction No. 9, which was given without exception, and is as follows:

" No. 9. The court instructs the jury that principals in the first degree in every murder or other crime are those who are the actors, or actual perpetrators of the crime—those who are the immediate perpetrators of the act. That principals in the second degree are those who did not with their own hands commit the act, but were present, aiding and abetting it. It is not necessary in order to make a person principal in the second degree that he be actually present when the crime was committed, or that he actually participated in the commission of the crime. The test as to whether or not he is a principal in the second degree is, was he encouraging, inciting, or in some manner offering aid or consent to the crime? All persons present lending countenance, or otherwise aiding, while another does the act, are principals in the second degree, and liable to the same pun-

ishment as if they were principals in the first degree and actually
committed the crime."

No. 10½ correctly states the law. Taylor and Henry Horton
were jointly indicted and tried as principals in the second de-
gree for aiding and abetting Jack Horton in the murder of Wil-
liam T. Horton, and in ascertaining their guilt or innocence, it
was entirely proper to consider all the evidence in the case, in-
cluding their acts and declarations "at the time of the said kill-
ing, both before and after."

We see no objection to the law as stated in instruction No.
13. The peculiar value of a trial by jury rests in large degree
upon the considerations clearly and forcibly stated in that in-
struction.

No. 10, asked for by the prisoner, was, we think, properly
refused. The jury had already been correctly instructed as to
what constitutes a reasonable doubt. The instruction asked for
tells the jury "that if a reasonable doubt of any fact necessary
to convict the prisoner is raised in the mind of the jury by the
evidence itself, or by the ingenuity of counsel, upon any hypo-
thesis consistent therewith, that doubt is decisive in favor of the
prisoner's acquittal." If the reasonable doubt here referred to
is such as is left upon the jury by a candid consideration of the
evidence, then it was unnecessary, because that proposition had
already been sufficiently covered by previous instructions. If
it was designed to impress upon the jury the idea that it was
their duty to acquit as a result of the doubt created in their
minds by the ingenuity of counsel and not arising upon a can-
did and impartial investigation of the evidence, then it was
erroneous. It certainly tended to confuse and mislead, and, in
any aspect of it, was properly rejected. It is true that such an
instruction was given in *Hatchett* v. *Commonwealth, supra,* but
in that case it was given at the request of the prisoner. It was
not, therefore, the subject of an exception, and its sufficiency
was not questioned in this court.

No. 11, we think, was properly rejected.   Jack Horton was, as we have seen, indicted for murder, and Taylor Horton as aiding and abetting him in the perpetration of that crime.   If, therefore, Jack Horton was guilty of murder and Taylor Horton was present, aiding, abetting and consenting to what he did, he is guilty of the offence with which he is charged.   The law is correctly stated upon this point in instruction No. 6, given at the instance of the prisoner, and is as follows:

"The court further instructs the jury that to constitute an aider and abettor it is essential that the aider and abettor should share the criminal intent of the principal or party who committed the offence.   The court further instructs the jury that wherever a reasonable doubt exists as to the person's intention in interfering in the struggle or fight between two other persons, he cannot be found guilty as an aider and abettor, and if the jury shall believe from the evidence in this case that a fight arose or occurred between Jack and W. T. Horton, in which the said Jack Horton was the aggressor, and that the said Jack Horton struck the said W. T. Horton two blows upon the head which resulted in his death, then the court tells the jury that unless they shall further believe, beyond all reasonable doubt, that Taylor Horton and Henry Horton interferred or took part in said difficulty, and shared in the criminal intent of the said Jack Horton, they cannot find the said Taylor Horton and Henry Horton guilty as aiders and abettors in the crime."

The addition to No. 12 was, we think, properly made, especially in view of the fact that the prisoner had already asked for and obtained instruction No. 4, which is absolutely identical with No. 12 as amended and given by the court.

The prisoner also moved the court to set aside the verdict. The verdict is sufficient in form.   The defendant was charged as an accessory before the fact, or principal in the second degree, and he is by the verdict found guilty as charged in the indict-

ment. See *Kemp* v. *Commonwealth*, and *Hatchett* v. *Commonwealth, supra.*

Nor did the court err in refusing to set aside the verdict as contrary to the evidence.

Without undertaking to discuss the evidence in detail, it is sufficient to say that on Sunday morning, the 29th of July, 1900, William T. Horton, commonly known as "Bud" Horton, Perry Short and his wife, and one or two others, were passing through the premises of Taylor Horton, on their way to church. W. T. Horton, it seems, had been forbidden to come upon the premises of Taylor Horton, and when he was recognized, Jack Horton joined the party, and a controversy arose which resulted in an assault upon W. T. Horton, who was struck two blows upon the head by Jack Horton with a piece of paling, which caused his death on the following Tuesday.

It appears from the testimony of Mary Doherty that Taylor Horton, some months before this time, said that "he would get 'Bud' yet (meaning the deceased); all he wanted was to catch him on his premises."

It appears from the testimony of several witnesses that Taylor Horton was present and participating when the fatal blow was struck, and the dying declaration of "Bud" Horton corroborates this view. When asked who killed him, his reply was: "Taylor Horton and his boys."

There is, as is usually the case where a number of persons testify to a transaction in which they have participated, a diversity of statement among them; nor is this at all inconsistent with the veracity of the witnesses. No one, perhaps, sees the whole of what is passing before him. Each testifies from his own point of view, which differs in a greater or less degree from that of others, but if their statements are contradictory and irreconcilable, then the jury have, as we have seen in discussing the instructions, "the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their

apparent candor and fairness, their apparent intelligence or lack of intelligence, and from all the other surrounding circumstances which are more worthy of credit."

The only question for us to consider is, whether upon the whole case the evidence is sufficient to sustain the verdict of the jury, and being of opinion that it is, the judgment must be affirmed.

*Affirmed.*