## WOODEN V. COMMONWEALTH.

September 9, 1915.

Absent, Keith, P.

1. ASSAULT—*Mere Presence—Aid or Encouragement.*—The mere presence of a person at the time and place of an assault, without any act, word or gesture in aid or encouragement of it, and without anything to show that he advised the assault, will not render him guilty; nor will the mere fact that the defendant knew of the assault justify a conviction. He must do something. He must aid or encourage by words or gestures, or do some act in the way of encouragement of the actual participants in order to make him guilty.

2. EVIDENCE—*Crime—Proof Necessary for Conviction.*—To justify a conviction of crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must go further and exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

Error to a judgment of the Corporation Court of the city of Buena Vista.

*Reversed.*

The opinion states the case.

*Hugh A. White,* for the plaintiff in error.

*John Garland Pollard, Attorney-General* and *C. B. Garnett, Assistant Attorney-General,* for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

Percy Wooden, about sixteen years of age, was indicted for maliciously, feloniously and unlawfully making an assault with a dangerous weapon, to-wit, a stone or rock, upon one Wallace Mowyer, with intent to maim, disable and kill the said Wallace Mowyer, and upon his trial was found guilty as charged in the indictment and sentenced to pay a fine of ten dollars and be confined in jail for sixty days. He thereupon applied for and obtained this writ of error from one of the judges of this court.

The only assignment of error is to the ruling of the trial court refusing to set aside the verdict of the jury upon the ground that the evidence is insufficient to support it, and there are but two questions raised by the record for consideration by this court: First, whether the evidence was sufficient to prove that the offense charged against the accused was committed within the jurisdiction of the Corporation Court of the city of Buena Vista; and, second, whether the evidence was sufficient to convict him of the offense charged.

In the view that this court takes of the case, it is only necessary to consider the second of the questions stated.

It appears that on Saturday night, April 25, 1915, five boys, viz: Wallace Mowyer, the prosecutor: Howard Wooden, Percy Wooden, the accused; Earle Bryant and Harry Campbell, met on the street in front of a picture show. They all started up the street, Mowyer and Bryant being in front of the Wooden boys, and in their progress up the street it seems that Howard Wooden either called Mowyer "Arch Wilson," or in talking to himself said, "My name is Wilson. I am a brother of Arch Wilson, or Tyree," the significance of which is not shown, and both Bryant and Campbell testify that Howard Wooden did not call Mowyer "Arch Wilson," but Mowyer seems to have been in-

censed by what had been said, and he and Campbell turned off to go behind Bias' shop when Mowyer said to Campbell, "If Howard starts anything I will end it with a rock in my pocket." The Wooden boys had gone on up the street when Mowyer went into Bryant's house to get, as he says, a drink of water, but his real purpose was to let the Wooden boys get ahead so that he might get away from them. There had been no threats or ill-feeling between the Woodens and Mowyer except the threat of the latter to "end the matter with a rock." On the contrary the boys theretofore had been friendly and. often played together. Mowyer, after tarrying in the Bryant house about five minutes, went on up the street and when he got to the residence of a Mrs. Hall, the Wooden boys were sitting on the side of the street on some rocks opposite Mrs. Hall's house. He says that Howard Wooden there again called him "Arch Wilson," and that, on this account, he hit Howard Wooden on the head with a rock. The Mrs. Hall spoken of, testifying for the Commonwealth, stated that she heard the boys in front of her house talking, and thought they were fighting; that she heard Howard Wooden tell Mowyer that he had hit him with a rock and he was going to have him arrested, to which Mowyer replied, "I reckon you will." She also states that she saw Percy Wooden, the accused, stoop down like he was going to pick something up, but did not know whether or not it was his hat; that the boys left the front of her house and went on up the street a block and a half away, and she then heard one of them say, "I have got you," but she does not know who said this. Further she says that she heard Howard Wooden say to his brother Percy, "Hurry up, Percy, he might get away;" but on cross-examination she modified this statement by saying in effect that she only heard him say to Percy, "Hurry up," and just what was meant by that she did not seem to know. The boys it seems

went up the street, Percy Wooden beside Mowyer, and Howard Wooden "sorter" beside him, until they got to an electric light, where Mowyer told Howard Wooden to let him alone, and about the time they got under the electric light Mowyer was hit by a missile, supposedly a rock, knocked senseless and remained unconscious for more than two days when he regained a measure of consciousness, and after a week, not having entirely recovered consciousness, was taken to a hospital at Staunton. There is no direct evidence whatever indicating that Percy Wooden, the accused, threw the rock which inflicted the injury upon Mowyer. In fact, it is conceded by the learned attorney-general that the evidence does not show conclusively that he did throw the rock, and it is only contended that the evidence is sufficient to show that the accused was a participant in the assault, aiding and abetting his brother, and therefore liable as a principal.

The only evidence in the record as to the hitting of the Mowyer boy with the rock is that of Mowyer himself, who states that they were about the electric light when he was hit; that it was very light and that he could see both Howard and Percy Wooden; that he was looking at Percy when he was hit, but he was trying to watch both of the boys; that if Percy had thrown the rock while he was looking at him he could have seen him, but that he saw nobody throw the rock, and after he was hit he knew nothing and never did know who hit him. Mowyer was asked: "You told Mr. Rucker you were watching both of them and had your head turned looking at Percy. Were you hit while you were looking at Percy? A. Yes, sir; but I was trying to watch both of them.

"Q. If Percy had thrown a rock while you were looking at him you could have seen him, couldn't you? A. Yes, sir.

"Q. Did you see anybody throw a rock? A. No, sir."

After Mowyer was hit he was taken to the house of the

parents of the Wooden boys and there taken care of until the next day when the parents of Mowyer ascertained his injury and a doctor was summoned. While the evidence shows that one of the Wooden boys probably threw the rock with which Mowyer was hit, it clearly appears from the statement made by Mowyer that it was not Percy Wooden. Beyond the fact that Percy Wooden, the accused, was present when Mowyer was hit with a rock, there is absolutely no evidence that he did anything whatever as a participant in the assault or in aiding and abetting his brother. It clearly appears from the evidence that neither of the Wooden boys had attacked Mowyer at the time that he hit Howard Wooden, and there is no evidence of any provocation to Percy Wooden to throw the rock that hit Mowyer, the fact being, as stated in Mowyer's own testimony, that he did not throw the rock.

The authorities are uniform that the mere presence of a person at the time and place of an assault, without any act, word or gesture in aid or encouragement of it, and without anything to show that he advised the assault, will not render him guilty. The authorities on the subject are collated in a note to *Brink* v. *Purnell*, 22 Am. & Eng. Ann. Cas. 829, where the rule is stated as follows:

"It is a general and well established principle of law, that one who is present at an assault, and who encourages the person who commits it, is liable criminally in the same manner and to the same extent as the person committing the assault.   *   *   *

"The principle that in cases of assault all who are guilty are principals and that there are no accessories applies, and hence a person who is so present at and encourages an assault is a principal and not merely an accessory.   *   *   *

"The mere presence of a person at the time and place of an assault, without any act, word or gesture in aid or encouragement of it, and without anything to show that he

advised the assault, will not render him guilty; * * * nor will the mere fact that the defendant knew of the assault justify a conviction. * * * He must do something; he must aid and encourage by words or gestures, or do some act in the way of encouragement of the actual participants in order to make him guilty as a principal."

In *Mitchell's Case*, 33 Gratt. (74 Va.) 845, the court said: "Principals are such either in the first or second degree. Principals in the first degree are those who are the immediate perpetrators of the act. Principals in the second degree are those who did not with their own hands commit the act, but were present aiding and abetting it." See, also *Horton's Case*, 99 Va. 848, 38 S. E. 184; *Daingerfield* v. *Thompson*, 33 Gratt. (74 Va.) 136, 36 Am. Rep. 783; 2 Rul. Cas. Law, 526.

It is well settled by numerous cases that it is not sufficient to create a suspicion or probability of guilt, but the evidence must go further and exclude every reasonable hypothesis except that of guilt. As said in *Hairston's Case*, 97 Va. 757, 32 S. E. 797, "The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence."

In the case of *Burton & Conquest* v. *Com'th*, 108 Va. 892, 62 S. E. 376, the opinion by Keith, P., held, that while motions for new trials must be heard as upon a demurrer to the evidence, yet "The rule does not leave the jury at liberty to guess, and where a fact is equally susceptible of two interpretations, one of which is consistent with the innocence of the accused, they cannot arbitrarily adopt that interpretation which incriminates him."

It might be conceded that either the accused or his brother threw the rock that hit Mowyer, but as we have seen it clearly appears from Mowyer's testimony that the accused did not throw it, for it was thrown and Mowyer was hit while he was looking directly at the accused, and

Mowyer says that he would have seen him throw the rock if he had done so.

In our view of the evidence in this case as a whole, it is entirely insufficient to sustain the finding of the jury, that the accused was guilty as charged in the indictment, or that he was guilty of any offense, and, therefore, the judgment upon their verdict is erroneous, and it will be reversed and annulled, the verdict of the jury set aside, and the case remanded to the Corporation Court of the city of Buena Vista for a new trial, if the court and prosecuting attorney shall be of opinion that a better case against the accused can be made.

*Reversed.*