# Richmond.

## FRANK TRIPLETT V. COMMONWEALTH.

### March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. INTOXICATING LIQUORS—*Sale—Sale by Woman in the Presence of her Husband—Evidence not Sufficient to Support Conviction—Case at Bar.*—In the instant case accused was found guilty of a violation of the prohibition act. It appeared from the evidence that defendant was present in his store when his wife sold a pint of liquor, but there was absolutely no evidence that he did anything whatever as a participant in the transaction, or in aiding and abetting his wife in making the sale. The purchaser of the liquor testified that defendant could have seen and heard him when he purchased the liquor. The officer making the arrest found some empty bottles upon the premises as well as two five-gallon tins, one of which smelled like whiskey had been in it. The uncontradicted evidence for the accused was to the effect that these bottles and cans had no connection with liquor.

    *Held:* That the evidence was not sufficient to support a verdict of guilty.

2. INTOXICATING LIQUORS—*Husband and Wife—Sale of Liquor by Wife—Silence of Husband.*—If it be conceded that the defendant remained silent and that his wife sold a pint of liquor in his store when caution and reason dictated that he should speak, this, while a circumstance consistent with his guilt, is also a circumstance not inconsistent with his innocence. This being true, it was the duty of the jury to give him the benefit of the doubt and render a verdict of not guilty.

3. CRIMINAL LAW—*Proof of Guilt—Reasonable Doubt.*—It is not sufficient to create a suspicion or probability of guilt, but the evidence must go further and exclude every reasonable hypothesis except that of guilt.

4. AIDER AND ABETTOR—*What Constitutes One an Aider or Abettor—Presence—Consent.*—To constitute one an aider and abettor, he must be guilty of some overt act, or he must share the criminal intent of the principal or party who commits the crime. Mere presence and consent alone are not sufficient to constitute one an aider and abettor in the commission of a crime.

Opinion.

5.  INTOXICATING LIQUORS—*Reputation—Instructions—Evidence not Objected to.*—In a prosecution for violation of the prohibition act, the court instructed the jury that they had a right to consider evidence of the defendant's reputation in determining his guilt or innocence. This instruction was based upon the testimony of a witness that the general reputation of the accused as a violator of the prohibition law was bad.

    *Held:* That inasmuch as the evidence upon which this instruction was based was not objected to, and no motion made to exclude it before the giving of the instruction, an assignment of error to the giving of the instruction was without merit, on the question of the admission of illegal evidence.

6.  INTOXICATING LIQUORS—*Instructions—Emphasizing a Particular Portion of the Evidence—Reputation or General Reputation.*—An instruction that the jury had a right to consider evidence of the defendant's reputation in determining his guilt or innocence was erroneous, in that it sought to emphasize a particular portion of the evidence, while ignoring all of the other evidence and circumstances of the case; and also because it was based on the *mere* reputation of the defendant, and not on his general reputation as a violator of the prohibition law.

7.  INTOXICATING LIQUORS—*Aider and Abettor—Instructions—Sale by Wife in the Presence of the Accused.*—Upon a prosecution for violation of the prohibition act, the court instructed the jury that if the wife of the accused sold ardent spirits in his presence and on his premises, and he did not protest but stood silent and permitted the sale to be made, then accused was guilty of aiding and abetting in selling ardent spirits.

    *Held:* Error as being given upon a partial view of the evidence, as omitting all reference to the question of knowledge, which was a question for the jury, and assuming as a fact that the defendant did have knowledge of the sale of liquor by his wife; and further in telling the jury that mere presence, without protest, made the defendant an aider and abettor.

Error to a judgment of the Corporation Court of the city of Danville.

*Reversed.*

The opinion states the case.

*B. H. Custer, Scott & Buchanan* and *D. H. Leake,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called the defendant, has been convicted of a second violation of the prohibition law, and sentenced to pay a fine of $100.00 and to confinement in jail for a period of six months.

From the judgment of the trial court this writ of error was awarded by one of the judges of the appellate court.

The defendant, in his petition for a writ of error, sets forth three assignments of error:

(1) The action of the trial court in refusing to set aside the verdict of the jury as being contrary to the law and the evidence.

(2-3) The action of the trial court in giving certain instructions upon the motion of the attorney for the Commonwealth.

[1] In disposing of the first assignment of error we must review the evidence as disclosed by the record.

The following is all of the material evidence in the case:

J. H. Martin, witness for the Commonwealth, testified as follows: "I am one of the police sergeants of the city of Danville and had police officer O. W. Bates in the car with me on the 7th day of July, 1923, and as we were approaching Frank Triplett's store on the River road, just outside of the corporate limits of Danville, we saw two colored men come out of said store and proceed along the road in front of us, and when we overtook them some distance from the store we ascertained them to be George Noble and Henry Mason. We stopped and

searched them and on Noble we found one pint of whiskey, we took them back to Triplett's store and found him and his wife there, and Noble stated in their presence that he got the whiskey from Mrs. Triplett. We arrested Triplett and his wife and carried them to the police station where they were bonded for their appearance in court. We also noticed a box of empty bottles sitting under the counter of his store, and we brought them with us to the court house. We also noticed two five gallon tin cans sitting in the store, one of which smelled like whiskey had been in it, but we did not bring them away with us. There was a white man by the name of Roy Simpkins sitting on the porch of the store when the negroes came out and when we went in there and arrested Triplett and his wife."

O. W. Bates, witness for the Commonwealth, testified as follows: "I am police *office* of the city of Danville, Virginia, and was with Sergeant Martin at the time he stopped two colored men, George Noble and Henry Mason, and when they were searched a pint of whiskey was found soon after they came out of Frank Triplett's store. When we called the colored men back to Triplett's store George Noble stated he bought the pint of whiskey found on him from Mrs. Triplett. She admitted she let him have it, which she went to the house and got out of her trunk for him, and that her husband knew nothing about it and had nothing to do with it. We arrested them both and carried them to the police station, where they gave bond."

George Noble, witness for the Commonwealth, testified as follows: "I work in the Schoolfield Cotton Mills and on my way home I stopped in Mr. Triplett's store with Henry Mason, my son-in-law, for him to pay a bill he owed there, and while he was paying his bill to Mrs. Triplett I called for a cigar and Mr. Triplett got the

cigar for me.  I then went to Mrs. Triplett where Mason was paying his account and asked her if she could get me a pint of whiskey and she told me maybe so and to stay there until she got back.  She went out of the store and in a short while she returned and came up where I was and took it from under apron the whiskey and handed it to me.  I gave her a $2.00 bill, put the whiskey in my pocket and walked out.  I don't know whether Mr. Triplett saw or heard me or not—but he was only a few feet away and could have seen and heard me."

Henry Mason, witness for the Commonwealth, testified as follows:  "I work in the Schoolfield Cotton Mills and in company with George Noble, my father-in-law, I stopped in to pay a bill I owed at Mr. Triplett's store, and while I was paying off the bill to Triplett, I heard Noble ask Mrs. Triplett about the whiskey and saw Mrs. Triplett when she handed it to him after she had left the store and returned.  I do not know whether Mr. Triplett saw and knew she let him have the whiskey or not, but he was a few feet away in the store."

Otis Bradley, witness for the Commonwealth, testified as follows:  "I am clerk of the Corporation Court of Danville, but was deputy clerk on the 8th day of November, 1922, when defendant, Frank Triplett, was convicted in said court for the unlawful keeping of ardent spirits, and this is the court order of said conviction as follows (here insert order) (see same on page 14)."

J. L. Edwards, a witness for the Commonwealth, testified as follows:  "I know the general reputation of Frank Triplett, defendant, as a violator of the prohibition law to be bad."

Sina Triplett, witness for the defendant, testified as follows:  "I am the wife of defendant, Frank Triplett, and was in the store on the day George Noble and

Henry Mason came in. Henry Mason paid me the bill he owed at the store and while I was waiting on him George Noble walked up and asked me if I could get him a pint of whiskey, and I told him I did-not know but maybe so and to stay there until I got back. I went out of the store and went to the house and got out of my trunk a pint of whiskey, carried it back to the store and let Noble have it. I brought it back under my apron and handed it to him and he gave me a $2.00 bill and they left the store. In a few minutes police officers Martin and Bates brought Noble and Mason in the store and Noble stated in the presence of the police officers that he got the whiskey from me and I admitted same and told the officers just how it was. They arrested my husband and me and carried us to the police station where we gave bond for appearance at court. I was convicted for selling Noble this whiskey, on which indictment I pleaded guilty in the Corporation Court of Danville and the order of the conviction was read to the jury on request of the Commonwealth's attorney (here insert order). (See same on page 14.) (My husband's eyesight is very poor and cannot see well enough to read items on the book in the store and make necessary change on payment of the accounts, so I have to keep the books and make the entries in settlement of accounts is why I was waiting on Mason. My husband was not standing near me when I gave Noble the whiskey and he did not know anything about me letting him have the whiskey. He did not know I had the whiskey at home in my trunk and had no part in this transaction, and in fact he did not know I was keeping a separate account in the American National Bank for myself. When the officers brought the colored men back in the store he did not know what it was for and did not know that I had sold them this whiskey, and this

I told the officers when I was confronted with the charge.) We had two five gallon cans setting in the store near the oil tank in which we kept gasoline for a long time and had had no whiskey in them. The box of bottles the officers carried away were bought of L. R. Hodnett, a merchant on Union street, in Danville, Virginia, to sell as other merchandise in the store, as there were frequent calls for empty bottles. My husband did not have them there for his use in selling whiskey."

L. R. Hodnett, witness for the defendant, testified as follows: "I am a merchant doing business in the city of Danville, Virginia, on Union street. I have sold Frank Triplett, defendant, boxes of empty bottles. I keep bottles and wholesale them to other merchants."

T. A. Gillespie, witness for the defendant, testified as follows: "I live a short distance from Frank Triplett's store and have been dealing with him and going about his store for several months, and have seen nothing to indicate that he was engaged in any way in the selling of whiskey. I know defendant's eyesight is very bad and on that account his wife keeps the books and settles up the accounts."

Robert Matherly, witness for the defendant, testified as follows: "I live not far from Frank Triplett, defendant, and have been about his store a great deal, would assist him in waiting on customers on some Saturdays and he would retail empty bottles and keep gasoline in the two five gallon tin cans which they kept there for that purpose. I have assisted in filling the cans from the oil wagons when I would be there, and this gasoline they would use in their car."

Henry Hardy, witness for defendant, testified as follows: "I have been driving for Texas Oil Company and have sold Frank Triplett gasoline and put it in five gallon tin cans at his store."

H. D. Goodrich, witness for the defendant, testified as follows: "I have been driving for the Texas Oil Company and I have for a year or two been delivering gasoline to the defendant, Frank Triplett, and would place it in five gallon tin cans a't his store on the River road."

Frank Triplett, witness for himself, testified as follows: "I am fifty-five years of age, live on the River road, and conduct a mercantile business. My eyesight is very bad and I have to keep my wife in the store to keep the books and accounts and make settlements, as I cannot see well enough to do so; that on the 7th day of July, 1923, George Noble and Henry Mason came into my store and Mason said he wanted to settle his account and I told him to go to my wife, and George Noble asked me to let him have a cigar. I did so and turned away to the door, and engaged in conversation with Roy Simpkins, who was sitting on the porch of the store. Soon after the colored men left the store officers brought them back to the store and stated that Noble had said he got a pint of whiskey in here, and Noble then stated that he got it from Mrs. Triplett and she told the officers that she let him have it, and that was the first I knew about him having gotten the whiskey from her. I did not know that she had any whiskey and I have not authorized her to handle any, and in fact I did not know until at that time that she had a private account in the American National Bank of Danville. What she had done along this line was without my information. I bought the bottles in question from L. R. Hodnett to retail in my store as other merchandise, as I have frequent calls for empty bottles. The two five gallon tin cans the officers claimed they saw in my store were kept there by me to keep gasoline in for use in my car. I had been keeping gasoline in them for a

long time and I did not use them for or keep any whiskey therein. I was convicted in the Corporation Court of Danville, in 1922, for some whiskey that was found on the place in which I was living, but I did not put it there."

From a careful consideration of the foregoing evidence, we are of the opinion that the first assignment of error is well founded, and the trial court should have set aside the verdict of the jury and awarded the defendant a new trial. While the evidence shows that the defendant was present in the store at the time of the sale of the liquor by his wife, there is absolutely no evidence that he did anything whatever as a participant n the transaction, or in aiding and abetting his wife n making the sale. The mere presence of the defendant in the store at the time the sale was made is not sufficient to render him criminally liable. Before he could be convicted, the burden was upon the Commonwealth to prove, beyond a reasonable doubt, that he did some act, spoke some word, or made some gesture in aid or encouragement of the illegal act, or that his wife was acting as his agent in making the sale.

The nearest approach to connecting the defendant with the *corpus delicti* is in the evidence of the witness, George Noble, who testified: "I don't know whether Mr. Triplett saw or heard me or not, but he was only a few feet away and could have seen and heard me."

Giving to this evidence the fullest possible weight, it fails to demonstrate, with that clarity essential in a criminal case, that the defendant did hear or see what was taking place between the witness and his wife. To say that there was a possibility, or, at most, a probability, that the defendant saw and heard what was done and said will not suffice; the act alleged in the indictment must be proved as charged.

[2] If it be conceded that the defendant remained si-

lent when caution and reason dictated that he should speak, this, while a circumstance consistent with his guilt, is also a circumstance not inconsistent with his innocence.  This being true, it was the duty of the jury to give him the benefit of the doubt and render a verdict of not guilty.

As said in *Hairston's Case*, 97 Va. 757, 32 S. E. 797: "The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence."

[3] In *Wooden's Case*, 117 Va. 935, 86 S. E. 306, Ann. Cas. 1917-D, Judge Cardwell held that "it is well settled by numerous cases that it is not sufficient to create a suspicion or probability of guilt, but the evidence must go further and exclude every reasonable hypothesis except that of guilt."

While the law will not permit one to remain silent when it is his duty to speak, this rule can only be invoked where the matter is free fr m doubt.  That the Commonwealth has failed to prove that the defendant was the principal in the transaction under review is clear.

[4] It seems, also, equally clear to us that the Commonwealth has failed to show that he was an aider and abettor.  To constitute one an aider and abettor, he must be guilty of some overt act, or he must share the criminal intent of the principal or party who commits the crime.

In *Rasnake's Case*, 135 Va. 710, 115 S. E. 543, Sims, P., cites with approval *Kemp's Case*, 80 Va. 443, and *Wooden's Case*, 117 Va. 930, 86 S. E. 305, Ann. Cas. 1917-D, 1032, wherein it is held that the settled rule is that mere presence and consent alone are not sufficient to constitute one an aider and abettor in the commission of a crime.

[5] The next assignment of error calls in question the

action of the trial court in giving the following instruction:

"The court instructs the jury that they have a right to consider evidence of the defendant's reputation in determining his guilt or innocence."

This instruction is based on the evidence of the witness, J. L. Edwards, who testified as follows: "I know the general reputation of Frank Triplett, defendant, as a violator of the prohibition law to be bad."

To the introduction of this evidence the defendant did not object, nor did he move to exclude the same when the instruction based thereon was offered by the Commonwealth; nor is the error relied on specifically referred to in the petition for a writ of error.

Inasmuch as the evidence upon which this instruction was based was not objected to and no motion made to exclude same before the giving of the instruction to the jury, we are of the opinion that the assignment of error is without merit, on the question of the admission of illegal evidence.

In *Newberry* v. *Watts*, 116 Va. 730, 82 S. E. 703, Judge Buchanan, in delivering the opinion of the court, said: "The general rule is that the failure to object or otherwise raise the question of the admissibility of the evidence on the trial is a waiver of the objections thereto * *. If a litigant sits by and permits evidence to go to the jury which the court, if it had been objected to, would have excluded, the jury have the right and it is their duty to consider it along with all the evidence and give it such weight as they think it is entitled to. They may or may not believe it, but so far as they do or do not their judgment is not controlled by rules of law."

[6] We are of the opinion, however, that if legal in any event, the instruction in the form given is erroneous. It seeks to emphasize a particular portion of the evidence, while ignoring all of the other evidence and

circumstances of the case.   It is also based on the *mere* reputation of the defendant and not on his general reputation as a violator of the prohibition law.

[7] The third assignment of error relied on is the action of the trial court in giving to the jury the following instruction:

"The court instructs the jury that if they believe from the evidence, beyond a reasonable doubt, that Mrs. Triplett sold ardent spirits in the presence of the defendant and on premises over which the defendant exercised control, in a store operated by him, and he did not protest but stood silent and permitted the sale to be made, then the defendant is guilty of aiding and abetting in selling ardent spirits."

From what has been said, *supra*, on the question as to who is an aider and abettor, it necessarily follows that we are of the opinion that the instruction complained of is erroneous.   It is also erroneous for the following reasons:   (a) It is given upon a partial view of the evidence; (b) it omits all reference to the question of knowledge, which was a question for the jury, and assumes as a fact that the defendant did have knowledge of the sale of liquor by his wife; (c) it further tells the jury that mere presence at the commission of the offense, without protest, makes the defendant an aider and abettor, which, as we have seen, is not the law in this jurisdiction.

For the reasons stated, the judgment of the trial court is reversed and anulled, the verdict of the jury set aside, and the case remanded for a new trial, if the representative of the Commonwealth deems it advisable, in view of the fact that Sina Triplett, the wife of defendant, has been tried and convicted for the offense charged against the defendant.

*Reversed.*