# GRUBB MOTOR LINES, Inc. v. WOODSON.

## No. 5872.

United States Court of Appeals
Fourth Circuit.

Argued April 12, 1949.

Decided May 31, 1949.

Robert Lewis Young and John B. Browder, Richmond, Va., for appellants.

George E. Allen, Richmond, Va. (Alexander W. Neal, Jr., Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The plaintiff below, Mamie Woodson, filed her complaint against the defendants,, Grubb Motor Lines, Incorporated, and Floyd Shoaf, in the United States District Court for the Eastern District of Virginia, alleging, in substance, that on August 24, 1947, the defendants negligently drove a motor vehicle against her. The defendants' answer denied that they were negligent and asserted contributory negligence on the part of the plaintiff as an additional defense. The case was tried before a jury and a verdict was returned in favor of the plaintiff in the amount of $10,000.00.

Prior to submission of the case to the jury, the defendants moved for a directed verdict; the District Court reserved its ruling on this motion. Following the return of the jury's verdict, the defendants moved for judgment notwithstanding the verdict. Both these motions were then overruled and judgment was entered in accordance with the verdict. From these rulings, denying their motions for directed verdict and for judgment non obstante veredicto, the defendants have taken this appeal to us.

The accident happened a few miles outside Richmond, Virginia, at the intersection of U. S. Highway No. 1 and Hilliard Road, Henrico County. No. 1, at that point, runs north and south; Hilliard Road, east and west. At the time of the accident, No. 1 was a typical four lane highway consisting of two northbound and two southbound lanes. Each lane was 10 feet wide, so that the highway had a total width of 40 feet. The north and southbound lanes were separated by a double white line in the center of the highway, while the two northbound lanes (and, similarly, the two southbound lanes) were separated by a single broken white line.

The plaintiff, a colored woman thirty-seven years old, was proceeding at the time of the accident to the Hermitage Country Club, where she was employed. She alighted from a northbound bus just off the easternmost edge of Highway No. 1; it was then necessary for her to cross No. 1, from the east to the west, in order to reach the Club.

Before undertaking to cross the highway, plaintiff waited until the bus from which she had disembarked had passed in front of her and had proceeded on its way north. She then looked to her left and saw the defendants' truck, of the tractor-trailer type, travelling northbound toward her, at a distance of approximately 900 feet. (The accident occurred at about nine A. M., the road was straight and the visibility was admittedly excellent.) She then looked to her right and started on across the highway.

While the testimony is inconclusive as to just how far across the highway the plaintiff proceeded, it seems clear that she passed well in front of defendants' truck and reached, at least, the middle of the western, or inside, northbound lane. She testified that she then looked back to her left and saw the defendants' truck at the southern entrance to a service station (which proved by measurement to be 167 feet away), at which time the truck appeared to her, according to her testimony, to be "running just as fast as it could go." Her actions were then described by her as follows:

"After I seen it was so close on me I started to hesitate. I didn't know whether to go forward or come backward; thinking that I had further to walk forward than I

had to come backward, I decided to go backward to try to save myself."

In other words, after hesitating an indeterminable length of time, she attempted to retrace her steps and pass, again in front of defendants' truck, back to the eastern edge of the highway.

The defendant Shoaf, driver of the truck owned by the other defendant, Grubb Motor Lines, Incorporated, testified that he applied his brakes and turned his vehicle to the right as abruptly as possible. He was unable to stop, however, and succeeded in getting only the forward part of his tractor safely by the plaintiff. Either the left rear wheel of his tractor or his left trailer wheel ran over and crushed the plaintiff's foot.

We come, now, to the question presented by the appeal, i. e., the propriety of the District Judge's overruling of defendants' motions for a directed verdict and for judgment non obstante veredicto.

■ Although the evidence relative to the speed of defendants' truck presents some conflict, accepting that portion of it most favorable to the plaintiff, we have no difficulty in sustaining a finding by the jury that the defendants were travelling through an intersection at an excessive rate of speed. Thus, there was ample evidence to support the jury's verdict insofar as it implies a finding of primary, or initial, negligence on the part of defendants. We do not review the evidence, here, in detail because in the view we take of the case the question becomes relatively unimportant.

This brings us to the defendants' assertion that the plaintiff was guilty of contributory negligence as a matter of law and that the District Judge should have so ruled. We have already mentioned the unsatisfactory state of the proof as to just how far the plaintiff had proceeded toward the center of the highway before she turned and retraced her steps toward the eastern edge. The plaintiff, herself, never undertook to establish this fact. The only part of her testimony remotely pertinent to this point is her statement that she decided to retrace her steps because she thought she "had further to walk forward than I had to come backward." This, of course,

would place her some distance—but an undetermined distance—short of the double line in the center of the highway. Much the same must be said of the testimony of the plaintiff's witness, Channing Smith, who testified that he had reached the center of the highway, and "I was ahead of Mrs. Woodson." But he did not see the plaintiff behind him on the highway and did not attempt to state *how far* ahead of her he was.

The defendants' witnesses, Shoaf, the defendant driver, and Bull, driver of a southbound bus, who witnessed the entire occurrence, both testified that the plaintiff had reached the center, or "about the center," of the highway before turning back.

When this testimony is considered in the light of the fact that the plaintiff, after turning back, ran fast for at least a second or two before running into the defendants' truck somewhere in the outside northbound lane, it is apparent that the plaintiff must of necessity have been, at least, somewhere in the inside northbound lane (if not, in fact, very close to the center of the highway) at the time she turned and retraced her steps.

■ The traffic situation in the four lanes of Highway No. 1, at that time, was as follows: The bus driven by the witness Bull was some little distance north of the collision point, proceeding south in the outside southbound lane; the inside southbound lane was occupied by a truck at that moment engaged in passing the bus driven by Bull; the defendants' truck was in the outside northbound lane and never left this lane except to pull to the right, off the hard surface, in an attempt to avoid the plaintiff; and the inside northbound lane (the one occupied by plaintiff) was completely devoid of any vehicles. The plaintiff, then, was standing in the only one of the four lanes in which there was absolutely no traffic, and she would have been entirely safe had she remained anywhere within that 10 foot lane. The plaintiff, however, left this zone of comparative—if not absolute—safety and, attempting to return to the side of the highway from which she had come, ran directly into the path of defendants' approaching vehicle. On these facts, she was guilty of contributory negligence as a

matter of law, and the District Judge erred in failing to so hold. Virginia authorities, similar on the facts, are: Hooker v. Hancock, 188 Va. 345, 49 S.E.2d 711; Jenkins v. Johnson, 186 Va. 191, 42 S.E.2d 319; Willard Stores, Inc. v. Cornnell, 181 Va. 143, 23 S.E.2d 761; and see, decided by this Court, Thomas v. Goldman, 4 Cir., 167 F. 2d 315.

The plaintiff relies heavily upon Sections 2154(123) (c) and 2154(126) (b) and (c) of the Virginia Code, 1942, which provide, substantially, that a pedestrian crossing at an intersection shall have the right of way over motor vehicles. Plaintiff calls our attention to decisions stating that this right of way of the pedestrian exists during the entire crossing, that is, until the pedestrian has negotiated the crossing from one side of the street to the other. Bethea v. Virginia Electric & Power Co., 183 Va. 873, 33 S.E.2d 651; Lucas v. Craft, 161 Va. 228, 170 S.E 836; cf. Nelson v. Dayton, 184 Va. 754, 36 S.E.2d 535.

These cases, however, must be read in the light of their facts. Such right of way statutes as these must be given a sensible construction and are properly applied in cases where it is reasonably apparent that either the pedestrian or the vehicle must yield in order to avoid a collision. Green v. Ruffin, 141 Va. 628, 637, 125 S.E. 742, 744, rehearing denied 127 S.E. 486 (holding an ordinance which gives vehicles the right of way over pedestrians between intersections applicable only where the vehicle and pedestrian approach "at the same time, the same point"); Virginia Ry. & Power Co. v. N. H. Slack Grocery Co., 126 Va. 685, 693-694, 101 S.E. 878. In the case before us, the plaintiff had already proceeded far enough in her travel across the highway to permit the defendants to drive over the crossing behind her. Her actions up to this point gave no indication that she was likely to retrace her steps into the path of defendants' oncoming truck and, considering the fact that plaintiff was in a position of safety in the only lane in which there was no vehicle, defendants were not bound to anticipate that she would return to their lane of traffic. Cf. Jenkins v. Johnson, su-

pra. In other words, defendants' truck was not approaching the plaintiff, nor was it approaching a portion of the intersection she might reasonably be expected to use. The right of way statutes are not applicable to these circumstances. Cf. Thomas v. Goldman, supra. We know of no Virginia decisions to the contrary and the general law elsewhere is certainly to this effect. E. g., Stafford v. Jones, 292 Mass. 489, 198 N.E. 745; Switzer v. Baker, 178 Iowa 1063, 160 N.W. 372; 3 Berry, Law of Automobiles §§ 3.13, 3.191; 5 Am.Jur., Automobiles § 297; Annotations, 47 A.L.R. 595, 603; 37 A.L.R. 493, 502; 21 A.L.R. 974, 982.

Since, as has been indicated, the plaintiff was guilty of contributory negligence as a matter of law, she can recover only if, despite her negligence, the defendants, in the exercise of ordinary care, had a last clear chance to avoid injuring the plaintiff and failed to avail themselves of this opportunity.

In Virginia, it is clearly established that the burden is upon the plaintiff to prove facts which will bring the case within the doctrine of last clear chance. De Muth v. Curtiss, 188 Va. 249, 49 S.E.2d 250; Stark v. Hubbard, 187 Va. 820, 48 S.E.2d 216; Green v. Ruffin, supra. To sustain a finding upon the question of last clear chance, plaintiff's proof must show that, *at the time her actions indicated that she would retrace her steps,* the defendants in fact had a last clear chance to avoid striking her.

The defendant driver, Shoaf, testified that, when he saw plaintiff near the center of the road, he could have stopped "if I had known that she was going to come back." He testified, also: "Q. Do you have any idea approximately how far you were from her when you noticed her making that movement to run back? A. It was pretty close, around, I would say, between 60 or 65 feet or something like that." The remainder of his testimony in point was that he was travelling "around 35 miles an hour"; that at a speed of 35 miles an hour "it would take approximately 120 feet to 125 feet" to stop; that he positively could have stopped within 150 feet;

and that he applied his brakes, when the plaintiff turned back, but was unable to stop in the distance remaining.

In every detail of this testimony Shoaf was corroborated by the witness Bull who estimated the defendants' speed at "somewhere between 35 and 40 miles an hour," who placed the distance between the plaintiff and the truck when plaintiff turned back at "approximately 75 feet," and who stated that it did not appear to him that there was time enough for defendants to stop.

■ Despite this positive testimony, plaintiff did not once state her own estimate of how far away the truck was when she turned and ran back. It is true she testified that, when she saw the truck a second time, it was at a point measured to be 167 feet away. But she was then asked: "And did you immediately decide you had to do something one way or the other?" to which she replied: "No, because at first I was dumbfounded. I had to hesitate because I didn't know whether to go in front of the bus or go back and thinking I hadn't come forward as far as I had to go backward, I decided to go backward was my safest." Thus, no finding as to the distance between the truck and the plaintiff at the crucial point of time (when her actions indicated her intention to run back) can be based on her statement that the truck was 167 feet away when she saw it the second time. Any finding arrived at in that fashion must be the result of sheer speculation, for there is absolutely no suggestion in the record as to *how long* she hesitated, after seeing the truck 167 feet away, *before* turning back across the highway. There is, therefore, nothing in the record to indicate that the distance in which the defendants had an opportunity to avoid the plaintiff, after her peril was known to them, was anything greater than the 60-75 feet testified to by the witnesses Shoaf and Bull, and similarly, nothing to contradict the defendants' evidence that this was not in fact sufficient distance to enable them to stop at a speed of 35 miles per hour. (We accept, here, the defendants' testimony to a speed of 35 miles per hour rather than the plaintiff's statement that the truck was "running just as fast as it could go," since the former

is obviously more favorable to the plaintiff in connection with last clear chance.) No instruction or finding based on the doctrine of last clear chance was warranted by the evidence, and the judgment below must therefore be reversed.

■ In so holding, we are not unmindful of the principle that, on a motion for judgment notwithstanding the verdict, that portion of the evidence must be accepted which is most favorable to the party in whose favor the verdict was rendered. That principle does not overcome a total lack of evidence to support the verdict.

The Judgment below is reversed and the case is remanded to the District Court with instructions to enter judgment in favor of the defendants.

Reversed.