# Richmond

### VIRGIE LEE PINE OVERTON v. CHARLES SLAUGHTER.

November 21, 1949.

Record No. 3537.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Sons* and *Robert F. McMurran*, for the plaintiff in error.

*H. M. Woodward*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff below, Virgie Lee Pine Overton, instituted an action at law against Charles Slaughter for damages, alleging that she was struck by an automobile driven by him, from which she received serious permanent and painful injuries. The case was tried by jury and their verdict was in favor of the defendant. The court entered judgment thereon and she has been granted the present writ of error.

The accident occurred on High street, in the city of Portsmouth, where it intersects with Pembroke avenue. There was no traffic light or traffic officer at the intersection. High street runs approximately east and west, is straight and level, and 60 feet in width from curb to curb. In the center is a white line dividing the street into two lanes of traffic, one for traffic going west and the other for traffic going east. Each lane is sufficiently wide for three cars to be driven abreast in the same direction at the same time, if no cars are parked at the curb. The accident occurred on the 18th of January, 1947, near dusk or dark. The defendant said that it occurred around six o'clock. The plaintiff fixed the time as between five and six o'clock. Photographs and a drawing, showing the material points of interest, were filed as exhibits in the case.

There was a decided conflict in the testimony. The plain-

tiff and her witnesses testified that she was proceeding Northwardly across High street at the intersection of Pembroke avenue and had advanced from 8 to 12 feet into High street when the defendant's automobile which was proceeding west left its westbound lane and was driven south of the white line and over on the side used for eastbound traffic, striking her with the right front fender; that the automobile then made a U turn in the eastbound traffic lane and came to rest at the south curb with its front pointing in the opposite direction. The plaintiff was found behind the defendant's car at the south curb. She testified that when she first saw the automobile it was approaching 50 or 60 feet away, running very fast, and that it suddenly came on the wrong side of the street and struck her.

An eyewitness who was close to the scene said that the defendant's automobile was being driven at from 40 to 45 miles per hour and struck the plaintiff when she was 8 or 9 feet from the southern curb of High street, and that she was knocked 30 to 40 feet, her body landing at the southern curb of High street. The witness also stated that there were no other cars near the scene of accident, and that there was no apparent reason why the defendant drove to his left side of the street. Other witnesses for the plaintiff testified substantially to the same effect.

However, the defendant gave this account of what happened: "It had been raining that day. It was more or less misty. It was not exactly foggy, but a bad night to see. Lights were on at Parker's Market, and further up the street, I don't know exactly how far. You can't judge distance very good at night. There were cars coming and were glaring, and I didn't see the woman. Just at the time I saw her I hit her, and I cut the wheels the best I could to keep from hitting her, and went on and slapped on the brakes and cut the steering wheel to the left, and the car slid to the lefthand side of High street and headed in the opposite direction, east towards the ferry."

The defendant stated that his headlights were on but were

on the low beam, that his right front fender struck the plaintiff, that he had speeded up to about 28 miles an hour to pass a car proceeding in the same direction, driven by one Cross, and that the visibility was poor on account of the mist. He also stated that he was driving in the westbound lane when he struck the plaintiff.

Cross, a witness for the defendant, testified that he was driving in the same direction on High street as the defendant; that the defendant passed him, and that the plaintiff had crossed to the north side of High street when she was struck by the defendant's car which was passing to the left of the car driven by the witness. Cross said that the defendant was driving around 30 miles per hour and that he did not think he drove to the left side of the middle white line before striking the plaintiff, though he could not see the center white line; and that the accident happened about dusk. He said that no cars were approaching from the opposite direction.

Upon this testimony and upon the instructions granted by the court, the jury, as we have stated, found in favor of the defendant. If this were all, we would feel bound to affirm the verdict. However, the plaintiff in error contends that serious and prejudicial error was committed by the court below when it granted, at the request of the defendant and over the objection of the plaintiff, instruction B.

Instruction B is as follows: "The court instructs the jury that the law requires a pedestrian, before starting to cross a street, to look to the left for traffic approaching on that side, and upon reaching the center of the street, to look to the right for traffic approaching on that side; and while the statute accords a pedestrian the right of way at intersections, such pedestrian is guilty of contributory negligence which bars any recovery for injuries suffered, if the pedestrian attempts to assert the right of way in the face of approaching traffic dangerously near.

"If you believe from the evidence in this case that the plaintiff failed to observe the legal duties required of her

in any respect, or that she attempted to continue to cross when the defendant's automobile was so close that she could not safely do so, then she is guilty of contributory negligence and cannot recover in this action."

■ We are of opinion that the instruction was erroneous. There are several material defects in it. The first paragraph ignores the elementary proposition that the conduct of the pedestrian in crossing the street is to be measured by the rule of ordinary care. This paragraph would make the pedestrian guilty of contributory negligence as a matter of law in all cases regardless of whether or not he exercised reasonable care in attempting to negotiate the crossing. This objection is again reflected in the last line of the first paragraph, "in the face of approaching traffic dangerously near". In the case at bar, if the plaintiff's version be correct, and that was for the jury, the car of the defendant might have been dangerously near in the westbound traffic lane but it would not have struck her had it not left the westbound traffic lane and entered the eastbound lane. She was not charged with assuming, if she were telling the truth, that the car would be driven to the left of the white line dangerously near her. The instruction was a finding one and it should not have ignored this feature of the case. It also failed to tell the jury that the burden of proving contributory negligence was upon the defendant. There was no instruction granted which placed this burden upon the defendant.

Another serious defect in the instruction is that it failed to embrace the legal principle that the contributory negligence of the plaintiff, if she were guilty of such negligence, must have been the proximate cause of her injuries, or must have efficiently contributed thereto. Again, another defect in the instruction is, "if you believe from the evidence in this case that the plaintiff failed to observe the legal duties required of her *in any respect* * * *",—this language was too indefinite. The instruction should have defined her duties more clearly.

■ The defendant in error contends that authority for

the instruction is found in the case of *Thornton* v. *Downes*, 177 Va. 451, 14 S. E. (2d) 345. We have carefully reviewed the opinion in that case, and while, at page 458, in substance, the same principles that are set out in instruction B were stated, the record does not disclose that any instruction embodying that particular language was granted in that case. Simply because a statement is made by this court in one of its opinions applicable to the facts in that case, does not necessarily mean that that identical language can be lifted out of the opinion, placed in an instruction, and receive the approval of this court.

■ The court, in instruction No. 2, which we do not approve, but to which the defendant did not object, told the jury that the plaintiff had the right of way at this intersection and that it was the defendant's duty to yield it to her if they believed she was crossing at the intersection. Instruction B was in conflict with instruction No. 2 and, in effect, improperly limited, if it did not entirely take away from the plaintiff the benefit of her right of way provided for in the statute and attempted to be set out in instruction No. 2. Instruction B, being a finding instruction, should have embraced the theory of the plaintiff's case.

In the *Thornton Case, Lucas* v. *Craft*, 161 Va. 228, 235, 170 S. E. 836, was not mentioned. We do not think that the court in the *Thornton Case* intended to overrule or modify the *Lucas Case*. In the latter case, at pages 234 and 235, this court, speaking through Mr. Justice Holt, said: "The language and intent of the General Assembly is so plainly expressed in the statute that it needs no interpretation or construction. It means what is said. At intersecting streets where there are neither traffic lights nor traffic officers, the pedestrian has a superior right—that is, the right to cross from one side of the street to the other in preference or priority over vehicles—and drivers of vehicles must respect this right and yield the right of way to the pedestrian. The pedestrian's right of way extends from one side of the street to the other. It does not begin at any particular point in the

intersection nor does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing. It is impossible, without nullifying the statute, to divide this right of way into different stages in the intersection, yielding the right of way to the pedestrian at one point in the intersection and denying it at another, all at the time of negotiating the *one* crossing."

And again the principle enunciated in the *Lucas Case* was approved in *Bethea* v. *Virginia Elec., etc., Co.*, 183 Va. 873, at page 879, 33 S. E. (2d) 651. In the *Bethea Case* it is clearly stated that where the pedestrian is crossing at a regular street intersection where there is no traffic light or traffic officer, he has the right of way during the entire crossing, that is, from one side of the street to the other. It will be noted that the *Bethea Case* was decided four years subsequent to the *Thornton Case*.

Of course, the pedestrian's right of way at such intersection does not mean that he can proceed across the street in reckless disregard of the open and obvious dangers of approaching traffic bearing down upon him. His duty is measured by the general rule of ordinary care. If he fails to exercise that care and negligently steps in front of swiftly moving traffic and is hurt he is guilty of contributory negligence regardless of the right of way. Generally this issue is a jury question, with the burden of proof upon the defendant.

Counsel for the defendant in error contends that the objection to instruction B made by counsel for the plaintiff in error was not broad enough to permit the court to consider the various attacks which have been made upon the instruction in this court. While the objection could have been more definite and complete, it seems to have been sufficiently broad to have given the trial court notice of the substance of the objection. We therefore think that there was a substantial compliance with Rule 22.

In this particular case where there was such an irreconcil-

able conflict in the evidence and such a wide difference in the statements of the witnesses for the respective parties as to the point in the street where the plaintiff was struck, it became most important that the jury be correctly instructed. Any material defect in any one or more of the instructions might have influenced the jury to decide for the defendant. Instruction B did not state the correct rule to be applied, and granting it was reversible error.

We therefore reverse the judgment, set aside the verdict, and remand the case for a trial *de novo*.

*Reversed and remanded.*