**HALL  v.  McKINNEY et al.**
No. 6731.

United States Court of Appeals
Fourth Circuit.

Argued March 17, 1954.

Decided April 9, 1954.

Parker, Chief Judge, dissented.

Gordon P. Williams and Lionel Moses, Richmond, Va. (Thomas A. Williams, Richmond, Va., on brief), for appellant.

Alexander H. Sands, Jr., Richmond, Va. (Alexander H. Sands, Richmond, Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The appellant, Henry T. Hall, Administrator of the Estate of John Henry Hall, Deceased, instituted, in the United States District Court for the Eastern District of Virginia, a civil action for damages under the Death by Wrongful Act Statute of the State of Virginia, Code 1950, § 8–633 et seq., charging the appellees, William McKinney, operator, and C. C. Lemonds, owner, of one motor vehicle, and James A. Guggenbiller, owner and operator of another motor vehicle, with negligently causing fatal injury to appellant's decedent. The appellees and defendant Guggenbiller answered, denying any such negligence and pleading contributory negligence of appellant's decedent.

The case was tried before the District Judge and a jury. At the conclusion of the evidence offered by appellant, all the defendants moved for directed verdicts in their favor. These motions were granted, upon the grounds that there was no evidence of primary negligence on the part of the defendants contributing to the death of appellant's decedent and that decedent had been guilty of contributory negligence as a matter of law. There was no opposition to the motion for directed verdict on behalf of Guggenbiller; but appellant has appealed as to the defendants, McKinney and Lemonds, on the grounds that the questions as to their primary negligence and the contributory negligence of decedent should have been submitted to the jury.

Since we think that the District Judge correctly ruled that decedent was guilty of contributory negligence as a matter of law, which would bar any recovery, it is not necessary for us to pass upon whether there was sufficient evidence justifying the submission to the jury of the question whether appellees were guilty of primary negligence contributing to the death of decedent.

The collision between the tractor-trailer of appellees and the decedent with his bicycle occurred on U. S. Highway No. 1, just South of a point where, to one proceeding North (as was the tractor-trailer), U. S. Highway No. 1 forms the right-hand portion of a Y to the Northeast, while Mountain Road forms the Northwestern branch of this Y. Between these two branches of the Y, is Solomon's Store. There is quite a

settlement at this point, and No. 1 is a much travelled highway. Right at the point where Mountain Road joins Highway No. 1, is a caution light, suspended over the highway, blinking amber.

U. S. Highway No. 1, at this point, is a four lane highway, 45 feet wide and divided in the center by double white lines. Each traffic lane is a little over 10 feet wide. The two Northbound lanes are separated by a broken white line. The Easternmost, or No. 1 lane, has markings showing the word "THRU" designating it as the proper lane for traffic intending to proceed Northward through the intersection. The No. 2 lane has markings showing the words "LEFT TURN" designating it as the proper lane for traffic intending to turn left into Mountain Road. The speed limit from the City of Richmond Northward beyond the intersection was 40 miles an hour.

Unfortunately, it is not entirely clear just how the fatal accident happened. There was no eye-witness who could testify as to the precise events just before, and leading up to, the accident. McKinney, driver of the tractor-trailer, did not testify, but there is evidence that McKinney stated to State Trooper Downing that "he was traveling on the right hand side and had pulled out to pass some one and then the bicycle cut into him." We must, therefore, rely upon the testimony of Guggenbiller and Misses Corley and Jones, who were in the vicinity of the accident at the time it occurred.

Guggenbiller, at a distance of from 40 to 60 feet, was in his automobile trailing the tractor-trailer at a speed of between 35 and 40 miles an hour. He stated that he saw the decedent facing North on the East shoulder or extreme East edge of the highway, either mounting or pushing his bicycle. He said further that there was nothing to indicate to him that decedent was about to cross out into the highway and that he (Guggenbiller) did not apprehend any situation of danger. Guggenbiller then lost sight of decedent, cut his automobile to the right and heard the crash of the collision, but did not see decedent at the moment of impact.

Miss Shirley Corley testified:

"Well, I was attracted to the tractor-trailer as it was directly in front of the cleaner's and he was applying the air brakes and that attracted my attention, and the horn blowing, and at that time he was in the passing or center lane of the highway, headed North. I did not see the person that was on the bicycle until almost the instant of the impact, and it appeared to me that the driver was trying to pull the truck back into the right lane, and at the time I saw the both of them, the bicycle had turned to the left and was heading back in the direction of the highway from which he had ridden, on the side, and he struck—I don't know the exact part of the truck, but it was on the left front of some part of the tractor."

She further testified:

"Q. Where was the bicyclist when he was struck? A. He was almost at the double line, right here.

"Q. Oh, in lane 2. And the bicycle had turned? A. That's right, back in the direction from which he had ridden on this side.

"Q. And the truck and trailer was then swinging off in an Easterly direction; is that correct? A. Yes, sir.

"Q. Then the impact took place; is that right? A. That's right."

And further:

"Q. And you did not see him (the decedent) until, you stated, he had gotten either to the center or just beyond the center; is that correct? A. I saw him just as the impact occurred and the bicycle was turned, and he was almost on the double line.

"Q. And that was the first time that you had seen him? A. That's right."

The pertinent testimony of Miss Marion Jones, which was of little importance, was:

"A. I was sitting in the car with my back to the highway.

"Q. What was the first thing, if any, that you saw of the happening? A. I don't know why I turned around, but when I did I saw a man rolling in the air.

"Q. Saw a man rolling in the air? A. That's right.

"Q. Will you state to his Honor and the Gentlemen of the Jury how high above the road he was? A. I don't know. He was approximately about eight or ten feet, I think."

Upon granting the motion for a directed verdict for the defendants, the District Judge, on the question of decedent's contributory negligence, stated:

"Furthermore, contributory negligence of the decedent, that is, negligence which contributes in whole or in part to the injury, is a complete bar to recovery. Accepting the plaintiff's own evidence, which is the only thing before the Court, the decedent was unquestionably guilty of contributory negligence. He was on the side of the highway to the East, either on the shoulder or on the edge of the pavement, in a standing position, not moving. There is some question as to whether he was mounted on his bicycle, or pushing his bicycle, or standing by it, but he was in a place of safety, when this big tractor-trailer outfit, traveling at a lawful rate of speed, was only five hundred feet away, accepting the contention of counsel for the plaintiff in his argument as to the distance. For a person in such a position to undertake to cross a highway in the face of approaching equipment such as that is negligence. Even had the bicycle been an automobile, which is more easily maneuverable than a truck or a tractor-trailer, I think still he would have been guilty of negligence. But not only is that act of negligence clearly shown. According to undisputed testimony, after having crossed the two Northbound traffic lanes, with no Southbound traffic on the highway, and in a place of safety, the decedent turned and headed back toward the East right into the face of this same outfit which he either saw or should have seen."

Appellant is on the horns of a tragic dilemma. According to Guggenbiller, whose evidence is all we have as to events prior to the accident, decedent was on the shoulder, or East side, of the highway, in a place of complete safety, with nothing to indicate that he was about to cross the highway. If he did not look to the South, before attempting the crossing, he was clearly guilty of contributory negligence. If he did look, he must have seen the rapidly approaching tractor-trailer and the car of Guggenbiller and was, even more clearly, guilty of contributory negligence in trying to cross in the face of obvious peril.

If, on the other hand, we accept the evidence of Miss Corley, decedent had completely crossed the Eastern half of the highway before he was struck. He was then at a place of comparative safety. He could have accomplished his purpose—getting on the West side of the highway—and been even safer, had he continued across the Western side of the highway. There was no evidence of any Southbound vehicle on this Western side of the highway. Yet, according to Miss Corley, he attempted the foolhardy maneuver of crossing back to the Eastern side of the highway, right in the path of the Guggenbiller car and the tractor-trailer.

In Grubb Motor Lines v. Woodson, 4 Cir., 175 F.2d 278, 280, we stated:

"The plaintiff, however, left this zone of comparative—if not absolute—safety and, attempting to return to the side of the highway from which she had come, ran directly into the path of defendants' approaching vehicle. On these facts,

she was guilty of contributory negligence as a matter of law".

See, also, Taska v. Wolfe, 4 Cir., 208 F.2d 705, 708.

The judgment of the District Court is affirmed.

Affirmed.

PARKER, Chief Judge (dissenting).

In this case the trial judge directed verdict for the defendant at the conclusion of plaintiff's evidence on the ground that no negligence on the part of defendants was shown and contributory negligence on the part of plaintiff's intestate was established. I think that questions of fact were presented by the evidence which under the Seventh Amendment of the Constitution were for the decision of the jury and not the judge. There was evidence to the effect that defendants' tractor trailer was approaching a yellow blinking traffic light at a road intersection on a four lane highway at a speed of 35 to 40 miles an hour; that the driver did not reduce speed or bring the vehicle under control when approaching the traffic light until he was about to strike decedent, but, without reducing speed, swerved from the outside to the inside lane for the purpose of passing another car and struck the decedent who had crossed both northbound lanes and had reached the middle line of the highway. I think that this was sufficient to take the case to the jury on the question of defendants' negligence, on the theory that the driver was not exercising due care and keeping a proper lookout in approaching the intersection and the warning traffic light.

I think also, that the question of contributory negligence was one for the jury. Not only does the evidence not establish that decedent's death was due to his own negligence, but it fails to establish the manner of his death so that anyone can say with any certainty how it occurred. The driver of the truck, who was the only eye witness that could have thrown much light on the occurrence, was not examined because the directed verdict was granted at the close of plaintiff's evidence; and the evidence of the witnesses who were examined leaves the whole matter in doubt. Thus, there is evidence of a statement by the driver of the truck, which must be given the effect of primary evidence as an admission by a party defendant, that "he observed the bicycle and then all of a sudden it came out into the road and swung into the side of him", and "that he was traveling on the right hand side and had pulled out to pass someone and then the bicycle cut into him". On the other hand, there is the evidence of the witness Corley that decedent had reached the center of the highway and was hit while turning back in the direction from which he had come. Whether he was on the bicycle or was merely walking beside it is left in doubt. Whether he negligently started across the highway and got in the pathway of the oncoming truck, or whether he had reached a place of safety in the center of the highway and negligently started back, or whether, when he was in a place of safety in the center of the highway, he was endangered by the truck's negligently crossing over to the passing lane and took wrong action in the emergency, or whether, having reached a place of safety in the center of the highway, he was turning for some valid reason and without negligence and was struck because of the negligent operation of the truck— all of these are questions of fact as to which it cannot be said that the answers are so clear that reasonable men could have no doubt about them. Certainly, in the light of the rule that decedent is presumed to have exercised due care for his own safety and that the evidence must be taken in the light most favorable to plaintiff, it does not seem to me that the question of contributory negligence can be decided as a matter of law or that plaintiff can be denied the trial by jury to which the Constitution entitles him on questions of fact.

Decedent was crossing the highway at an intersection where the blinking traffic light required the vehicles using the

878

highway to proceed with caution. There was evidence from which the jury could have found that the truck was six hundred and twenty-five feet away when decedent was seen mounting his bicycle to cross. Defendant's evidence was three hundred feet. Both were mere estimates of the distance and it was for the jury to say which it would accept and, in either case, to say whether decedent was guilty of negligence in attempting the crossing. This has been held a question for the jury where the approaching vehicle was much nearer than 300 feet. Danner v. Cunningham, 194 Va. 142, 72 S.E.2d 354; Rhoades v. Meadows, 189 Va. 558, 54 S.E.2d 123; Overton v. Slaughter, 190 Va. 172, 56 S.E.2d 358; Ebel v. Traylor, 158 Va. 557, 164 S.E. 721; Green v. Ruffin, 141 Va. 628, 125 S.E. 742, 127 S.E. 486; Smith v. Virginia Ry. & Power Co., 144 Va. 169, 131 S.E. 440; Williams v. Kirkman, 232 N. C. 609, 61 S.E.2d 706. As said by this court in Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35, 38: "Questions of negligence or contributory negligence are ordinarily questions of fact involving the application of the rule of the reasonably prudent man to the facts of the case, and they are not to be decided by applying 'rules of thumb' to the evidentiary facts and treating as conclusions of law what are in reality conclusions of fact."

As to the suggestion that decedent was guilty of negligence if he reached the middle of the highway and then turned back, it is a sufficient answer that it was for the jury to say whether, in the light of the other evidence in the case, it would accept all or any part of the evidence of the witness upon which this contention is grounded. The direction in which decedent was thrown seems to negative his having been struck by the left side of the truck, as this witness testified; and certainly, if he had reached the center of the four lane highway, he was in a place of safety so far as the truck traveling in the east lane was concerned and had no reason to apprehend that it would attempt to pass another car at an intersection and come over and strike him in the middle of the highway.

On the evidence before us, no one can tell with certainty how this accident occurred. As heretofore stated, I think the evidence was sufficient to take the case to the jury on the question of negligence and while I think that there was evidence of contributory negligence, I do not think that the direction of a verdict on that ground was warranted. If the motion for directed verdict had been overruled, the conduct of deceased might have been so conclusively established by defendants' evidence as to justify direction of a verdict; but with the burden on the defendants to establish contributory negligence, I do not think that a directed verdict should have been granted on that ground when so much was left in doubt as to decedent's conduct. This is particularly true in view of the fact that there was testimony that decedent had crossed both northbound lanes of the highway and had reached what should have been a zone of safety and that the truck crossed over from the lane in which it was traveling, struck him in the center of the highway and finally came to rest on the shoulder of the opposite side. It will not do to hold a pedestrian guilty of contributory negligence as a matter of law merely because he is crossing a highway at an intersection; and that is what the directed verdict here amounts to, since there is no evidence establishing with any certainty where deceased was or what he was doing at the time he was struck except that he was in the highway at the intersection.